UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

                                          **MEMORANDUM & ORDER**
                                          11-CV-1990 (KAM)
IN RE 347 LINDEN LLC                      11-CV-2201 (KAM)
                                          11-CV-2202 (KAM)


----------------------------------X

**MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        On the afternoon of July 18, 2011, 347 Linden LLC
("347 Linden," "Debtor," or "Appellant") brought a second
"Emergency Order to Show Cause with Temporary Restraints" to
this court, requesting that the court order Federal National
Mortgage Association ("Fannie Mae," or "Appellee") to show
cause why an order should not be entered (1) staying two March
8, 2011 orders by the United States Bankruptcy Court, Eastern
District of New York (Rosenthal, J.) granting relief from a
stay and dismissing 347 Linden's Chapter 11 petition, and (2)
staying a state court foreclosure sale, scheduled for a third
time by Fannie Mae, of the property known as 347 Linden
Street, Brooklyn, New York 11237, Block 3328, Lot 47 (the
"Property"), for July 21, 2011 at 3:00 p.m.  Although
petitioner has had notice of the third scheduled pending
foreclosure sale for several weeks, petitioner has, for the
second time, brought this "Emergency" motion to this court on

1

the eve of the sale.  Fannie Mae opposes debtor's emergency
application.  For the reasons set forth below, the debtor's
request for a stay of the bankruptcy court's orders and of the
foreclosure sale is denied, and debtor's appeals of the
bankruptcy court's March 8, 2011 order lifting the stay and
dismissing the debtor's Chapter 11 proceeding are denied in
their entirety.

**BACKGROUND**

## I.    Facts

The court set forth the relevant factual background
in its Memorandum and Order dated June 8, 2011, familiarity
with which is presumed.  (Docket 11-cv-1990, ECF No. 16,
Memorandum and Order, dated June 8, 2011.)

## II.  Procedural History

On November 3, 2010, the day before the first
scheduled foreclosure sale of the Property, debtor filed a
petition for reorganization under Chapter 11 of Title 11 of
the United States Code, 11 U.S.C. § 101 *et seq.* (the
"Bankruptcy Code"), in the United States Bankruptcy Court for
the Eastern District of New York.  (Docket 11-cv-1990, ECF No.
9, [Fannie Mae's] Memorandum of Law in Opposition to
Appellant's Emergency Application for a Stay of the Bankruptcy
Court's Orders Granting Relief from Stay and Dismissing the
Chapter 11 Bankruptcy Case and a Stay of the Foreclosure Sale

for Property Known as 347 Linden Street, Brooklyn, New York

("Fannie Mae Opp.") at 5; Docket 11-cv-1990, ECF No. 1,

[Debtor's] Emergency Order to Show Cause with Temporary

Restraints, filed April 22, 2011 ("Debtor Pet.") at ¶ 24;

Docket 11-cv-1990, ECF No. 28, Docket 11-cv-2201, ECF No. 26,

Docket 11-cv-2202, ECF No. 25, [Debtor's] Emergency Order to

Show Cause with Temporary Restraints, filed July 18, 2011

("Debtor Second Pet.").)[1]

On January 14, 2011, Fannie Mae filed a motion for

entry of an order (a) dismissing the Chapter 11 petition; or

(b) modifying the automatic stay. (Fannie Mae Opp. at 5;

Debtor Pet. at ¶ 35; Debtor Second Pet. at ¶ 30.) Debtor

objected to the motion on February 16, 2011 and filed an

Amended Disclosure Statement and Amended Plan of

Reorganization on March 7, 2011. (Fannie Mae Opp. at 5;

Debtor Pet. at ¶¶ 43, 57; Debtor Second Pet. at ¶¶ 38, 52.)

Fannie Mae thereafter withdrew the portion of its motion

seeking dismissal, due to a service defect on the I.R.S.

(Fannie Mae Opp. at 5 n.2; Debtor Pet. at ¶ 53.)

On March 8, 2011, the Bankruptcy Court heard

argument on Fannie Mae's motion. (Fannie Mae Opp. at 5;

---

[1] The court cites to both debtor's original petition, filed April 22, 2011, and debtor's second petition, filed July 18, 2011. The petitions are largely duplicative, other than that the second petition includes the additional procedural history that occurred after the first petition was filed.

Debtor Pet. at ¶ 61; Debtor Second Pet. at ¶ 56.) Debtor did
not request to call any witnesses to testify. (Fannie Mae
Opp. at 11.) On the same day, the Bankruptcy Court granted
Fannie Mae's motion requesting relief from the automatic stay,
based on the court's findings that there was cause for lifting
the stay, that there was no equity in the property, and that
an effective reorganization plan was not possible. (Fannie
Mae Opp. at 11-13; Debtor Pet. at ¶¶ 71, 72; Debtor Second
Pet. at ¶¶ 66, 67.) The Bankruptcy Court also dismissed
debtor's petition *sua sponte,* on the ground that debtor had
failed to comply with the U.S. Trustee's requests for
information and documents, and because the debtor was unable
to demonstrate that there was a reasonable prospect of
reorganization. (Fannie Mae Opp. at 12; Debtor Pet. at ¶ 73;
Debtor Second Pet. at ¶ 68.) The Bankruptcy Court entered a
"Lift Stay Order" and a "Dismissal Order" on March 8, 2011.
(Fannie Mae Opp. at 12; Debtor Pet. at ¶¶ 75, 76; Debtor
Second Pet. at ¶¶ 70, 71.)

On March 22, 2011, debtor filed in the bankruptcy
court a notice of appeal of the Lift Stay Order and the
Dismissal Order. (Fannie Mae Opp. at 13; Debtor Pet. at
¶¶ 77, 78; Debtor Second Pet. at ¶¶ 72, 73.) On April 8,
2011, Fannie Mae filed in the state court foreclosure
proceeding a notice of sale of the property, scheduled for

April 28, 2011.  (Fannie Mae Opp. at 13; Debtor Pet. at ¶ 79;
Debtor Second Pet. at ¶ 74.)

On April 22, 2011, six days before the foreclosure
sale was scheduled, debtor filed his first "Emergency"
petition in this court.  (*See generally* Debtor Pet.)  The
court ordered Fannie Mae to show cause why an order should not
be entered staying the bankruptcy court's Lift Stay Order and
Dismissal Order and the foreclosure sale of the Property.
(ECF No. 3, Emergency Order to Show Cause with Temporary
Restraints, dated April 22, 2011.)  After hearing argument,
and based upon debtor's admission at its March 1, 2011 Rule
2004 Examination that the Property experienced ongoing drug
and crime problems, the court agreed to stay the Lift Stay
Order, the Dismissal Order and the foreclosure sale on the
condition that debtor provide a bond in the amount of $100,000
and supporting documentation by April 27, 2011.  (Fannie Mae
Opp. at 10 (citing Transcript of Rule 2004 Examination, dated
March 1, 2011, at 85).)  Upon debtor's posting of the bond,
the court continued the stay pending further order of the
court.  (Order dated April 27, 2011.)

On May 5, 2011, debtor filed in this court two
notices of appeal of the bankruptcy court's orders, one to
appeal the Lift Stay Order and one to appeal the Dismissal
Order.  (*See* Dockets 11-cv-2201; 11-cv-2202.)  The motions

were fully briefed on June 17, 2011. (*See* Docket 11-cv-2201, ECF No. 14, Debtor-Appellant's Reply Brief; Docket 11-cv-2202, ECF No. 13, Debtor-Appellant's Reply Brief.)

On June 8, 2011, the court denied the debtor's request for a stay of the bankruptcy court's orders and of the foreclosure sale. (Docket 11-cv-1990, ECF No. 16, Memorandum and Order, dated June 8, 2011.) Specifically, the court found that pursuant to Federal Rule of Bankruptcy Procedure 8005, debtor should have brought the motion to stay to the bankruptcy court in the first instance, rather than in the district court. (*Id.*)

Nearly six weeks later, and again six days before the third scheduled foreclosure sale, on July 15, 2011, debtor made an application before the bankruptcy court to stay the foreclosure sale pending appeal. (Docket 11-cv-1990, ECF No. 28-25, Emergency Order to Show Cause with Temporary Restraints, filed on July 15, 2011 in the United States Bankruptcy Court for the Eastern District of New York.) The bankruptcy court denied the motion on the same date. (Docket 11-cv-1990, ECF No. 28-28, Order Denying Motion to Prohibit/Enjoin/Restrain, Denying Motion to Stay Order Pending Appeal, dated July 15, 2011.)

On July 18, 2011, three days before the scheduled foreclosure sale, debtor brought the instant second "Emergency

Order to Show Cause with Temporary Restraints." (*See generally* Debtor Second Pet.)

This opinion constitutes the court's opinion on debtor's emergency motion (Debtor Second Pet.), as well as a decision on the merits of debtor's appeals of the bankruptcy court's March 8, 2011 Lift Stay Order and Dismissal Order (Docket 11-cv-2201, ECF No. 1; Docket 11-cv-2202, ECF No. 1).

## DISCUSSION

I.  **Debtor's Appeals of the Lift Stay Order and the Dismissal Order**

   a. **Standard of Review**

District courts are vested with appellate jurisdiction over final orders, decrees and judgments of bankruptcy courts pursuant to 28 U.S.C. § 158(a). Rule 8013 of the Federal Rules of Bankruptcy Procedures provides that a district court conducting appellate review may "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

District courts review bankruptcy court findings of fact for clear error and apply *de novo* review to conclusions of law. *See In re Adelphia Commc'ns Corp.*, 367 B.R. 84, 90-91 (S.D.N.Y. 2007). A bankruptcy court abuses its discretion when "it bases its decision on an erroneous view of the law or

clearly erroneous factual findings." *In re Watkins,* No. 06-cv-1341, 2008 U.S. Dist. LEXIS 20377, at *8 (E.D.N.Y. Mar. 14, 2008) (citing *Sears, Roebuck, & Coe. v. Spivey,* 265 B.R. 357, 364 (E.D.N.Y. 2001)). Factual findings are clearly erroneous "only if the reviewer is left with a definite and firm conviction that a mistake has been committed." *Id.* at *8 (citations and quotations omitted).

## b. Application

### i. Dismissal Order

In support of its view that the bankruptcy court abused its discretion in issuing the Dismissal Order, debtor argues that there was no cause to dismiss the case and the bankruptcy court erred in finding, without a hearing, that an effective reorganization was not possible. (Dockets 11-cv-2201, 11-cv-2201, ECF No. 9, Debtor-Appellant's Brief dated May 23, 2011 ("Debtor Appeal"), at 16-21.) In response, Fannie Mae argues that the bankruptcy court's *sua sponte* dismissal of the Chapter 11 case was a proper exercise of the court's discretion. (Dockets 11-cv-2201, 11-cv-2202, ECF No. 11, Federal National Mortgage Association's Memorandum of Law in Opposition to Debtor's Appellant's Brief dated June 7, 2011 ("Fannie Mae Appeals Opp.") at 19-22.) For the reasons set forth below, the court affirms the bankruptcy court's dismissal of debtor's petition.

Pursuant to 11 U.S.C. § 1112(b), a bankruptcy court may dismiss a Chapter 11 petition "for cause." 11 U.S.C. § 1112(b). The bankruptcy court may "dismiss a Chapter 11 [petition] for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process." *In re HBA E., Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988). Factors that the bankruptcy court may consider in dismissing a petition for cause are listed in 11 U.S.C. § 1112(b). *See Taub v. Adams*, 2010 U.S. Dist. LEXIS 104805, at *36 (E.D.N.Y. Aug. 30, 2010) ("A non-exclusive list of factors to consider in determining whether 'cause' exists is set out in 11 U.S.C. § 1112(b)(4)."). Further, a bankruptcy court may dismiss a case under Section 1112(b) *sua sponte*, if there is cause. *In re Munteanu*, No. 06 CV 6108, 2007 U.S. Dist. LEXIS 48233, at *7 (E.D.N.Y. June 28, 2007) (finding that a bankruptcy court did not abuse its discretion in dismissing a petition *sua sponte,* without motion from the U.S. Trustee).

Here, the bankruptcy court dismissed debtor's petition *sua sponte*, finding that:

> [T]he debtor has failed to file – provide the tax returns that were requested a couple of months ago . . . the plan is very suspect . . . Seems to me the projections – although I've heard Mr. Carlebach say to me they're one rental away from success, I think they're also

> one rental away from failure and disaster
> and I don't think . . . I could confirm a
> plan based on that and I don't see
> anything to changing to do that.  I think
> the debtor was overly optimistic.  The
> debtor has proved even for the five months
> of this case, and even before that, during
> the forbearance period, that they're
> unable to sustain . . . the economics of
> the building and make their payments to
> the secured creditor.  I think the debtor
> does not have a reasonable prospect of
> reorganization. . . . [T]here's no
> reasonable prospect for
> reorganization . . . .

(ECF No. 1 (11-cv-1990), Ex. J, Transcript of Proceedings

before the Honorable Joel B. Rosenthal, U.S. Bankruptcy Judge,

March 8, 2011 ("Bankr. Tr.") at 49:17-50:23.)  Upon review *de

novo* of the bankruptcy court's legal conclusions, and a review

for clear error of the bankruptcy court's factual findings,

the court affirms the bankruptcy court's dismissal of debtor's

petition.

As an initial matter, debtor's contentions that the

bankruptcy court erred in dismissing the petition *sua sponte*

are without merit.  (Docket 11-cv-2201, ECF No. 14, Docket 11-

cv-2202, ECF No. 13, Debtor-Appellant's Reply Brief, at 9-10.)

As debtor concedes, a bankruptcy court may dismiss a petition

*sua sponte* on a finding of "cause" under 11 U.S.C. § 1112.

*See, e.g., In re Munteanu*, 2007 U.S. Dist. LEXIS 48233, at *7.

Here, the Bankruptcy Court had before it evidence including:

the transcript of debtor's testimony at the December 13, 2010

meeting of creditors pursuant to Section 341 (the "341 Hearing"); the transcript of debtor's testimony at a March 1, 2011 Rule 2004 Examination; monthly operating reports submitted by the debtor during the course of bankruptcy, showing accounts receivable, rental income, expenses, and income projections; debtor's disclosure statement and proposed plan of reorganization; a purported loan commitment letter from an entity known as Talmu Inc., submitted by debtor as evidence of its ability to obtain a $140,000 investment to fund its plan; and underlying loan documents and documents from the state court foreclosure action, including the approximately $1.4 million judgment of foreclosure entered against the debtor in September 2010. (Fannie Mae Appeals Opp. at 4-5.) Because, as set forth below, the court finds that the Bankruptcy Court had "cause" to dismiss the petition based upon a sufficient factual record, it was permitted to do so *sua sponte.*

First, debtor's failure to provide information requested by the U.S. Trustee supports the Bankruptcy Court's decision to dismiss the case. The parties do not dispute that failure to provide information requested by the U.S. Trustee is a ground for dismissal. *See* 11 U.S.C. § 1112(b)(4)(h); *see also In re Westgate Props. Ltd.,* 432 B.R. 720, 723-24 (Bankr. N.D. Ohio 2010) (citing the "failure timely to provide

information . . . reasonably requested by the United States trustee" as a ground constituting "cause" for dismissal of debtor's Chapter 11 petition and finding dismissal appropriate because the information "was not provided until . . . the eve of the [hearing], and even then the information was not complete"); *In re Midwest Props. Of Shawano, LLC,* 442 B.R. 278, 286 n.9 (Bankr. D. Del. 2010) ("As argued by the [United States Trustee] at the hearing, [debtor's] failure to respond to the [Trustee's] reasonable requests for information also provides 'cause' for dismissal pursuant to 1112(b)(4)(h).").[2] Here, at the 341 Hearing in December 2011, the U.S. Trustee requested that debtor provide copies of certain tax returns and documents concerning funds expended by the debtor to pay personal expenses of the debtor's principal. Debtor failed to do so. (Bankr. Tr. at 37:12-15 ("He's too busy to give the U.S. Trustee whose duty – statutory duty is to get this stuff – it's not like, gee, I forgot – it's just I never got around to it yet.").) The court finds that the Bankruptcy Court properly dismissed the debtor's Chapter 11 proceeding for cause based on the debtor's ongoing three month failure to comply with the U.S. Trustee's request for tax returns and

---

[2] The court disagrees with debtor's view that the statutory directive to provide information requested by the United States Trustee is a mere "technicality." (Debtor Appeal at 22.) Further, the fact that debtor may not have been required to file tax returns does not relieve debtor of its duty to comply with the Trustee's requests for information.

documents regarding the debtor's use of funds to pay the personal expenses of its principal.

Alternatively, the court finds that there is evidence in the record to support the Bankruptcy Court's finding of cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4)(A). Section 1112(b)(4)(A) states that there is cause for dismissal when there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A); *see also In re Westgate Props., Ltd.,* 432 B.R. at 723 (dismissing case where it appeared unlikely that debtor could effectuate a plan of reorganization and debtor had failed to supply information requested by the U.S. Trustee). A court relying on the language of § 1112(b)(4)(A) must first determine whether the estate is suffering 'substantial or continuing loss[es] . . . or diminution,' before also deciding whether there is a 'reasonable likelihood of rehabilitation.'" *Taub*, 2010 U.S. Dist. LEXIS 104805, at *36-37. "A debtor's negative post-petition cash flow and inability to pay current expenses establishes that the estate is suffering continuing losses." *Id.* at *37 (citation omitted). In the record before the Bankruptcy Court, the debtor failed to make any mortgage payments between July 2009 and December 2011, and then the debtor failed to remain

13

current on the full amounts required by the Bankruptcy Court's
Final Cash Collateral Order.  Moreover, the debtor's rental
income had fallen short of the reorganization plan's projects
for three consecutive months.  (Fannie Mae Appeals Opp. at 8.)

Further, the Bankruptcy Court properly found that
debtor did not show that it had a reasonable likelihood of
rehabilitation.  The Bankruptcy Court based its finding that
debtor could not effectively reorganize on the factual record
before it, including, *inter alia,* that the debtor was "one
rental away from success . . . [and] also one rental away from
failure and disaster" (Bankr. Tr. at 50:7-12); that apart from
the debtor's hope of renting the vacant commercial unit at the
Property at a rental rate of $1500 per month beginning in
April 2011, there was no other prospect for increasing
debtor's income, except, as debtor's principal conceded, by
finding a treasure (Docket 11-cv-1990, ECF No. 10, Ex. 1,
Transcript of Proceedings before the Honorable Joel B.
Rosenthal, U.S. Bankruptcy Judge, December 13, 2010 at 38:7-
9); that debtor made no payments on the mortgage between July
2009 and December 2011, when it made a first cash collateral
payment pursuant to the Bankruptcy Court's order and debtor
made no payments since that time; that debtor failed to pay
the full amounts required by the Bankruptcy Court's Final Cash
Collateral Order, which required a payment by February 15 of

$8,020.69 toward Fannie Mae's adequate protection, plus $3,431 for taxes and insurance (Docket 11-cv-1990, ECF No. 1, Ex. B, Final Order Authorizing Debtor to Use Cash Collateral of Federal National Mortgage Association and Providing Adequate Protection, at ¶ 4); that debtor's petition was stagnant for five months (Bankr. Tr. at 36:17-24); and that debtor ignored and failed to respond to outstanding requests for paperwork by the U.S. Trustee (Bankr. Tr. at 36:24-37:4).

The court finds that the Bankruptcy Court's decision to dismiss the case based on ample evidence in the record was not an abuse of discretion, and agrees that debtor was unable to show a "reasonable likelihood of rehabilitation" pursuant to 11 U.S.C. § 1112(b)(4)(A).

Further, although debtor argues that it was improper for the Bankruptcy Court to lift the stay based on a shortfall in the debtor's adequate protection payments of $3,956 (Debtor Appeal at 24), debtor cites only to cases that underscore the bankruptcy court's discretion to decide the appropriate remedy. Those cases do not hold that the bankruptcy court was obligated to provide debtor with an opportunity to remedy the shortfall. (*Id.* at 25.) Moreover, although debtor has, since the time of the Bankruptcy Court's decision, found a tenant for the vacant property, the rental income, which is below the $1500 per month needed to reach debtor's income projections in

its proposed plan of reorganization (Debtor Second. Pet. at
¶ 76 (stating that the tenant's monthly rent is $1,350)), is
not sufficient to address the Bankruptcy Court's or this
court's concerns regarding the reasonable likelihood of
rehabilitation.  (Docket 11-cv-1990, ECF No. 1, Ex. F to Ex.
E, Projected Accrual Basis Income Statement, indicating
projected rent receipts of $18,052 beginning in April 2011.)

Finally, the following additional factors also
demonstrate the existence of cause to dismiss the case: (1)
debtor has only one significant asset, the Property which is
lacking in equity; (2) "the principal asset of the debtor was
the subject of a foreclosure action at the time of the
bankruptcy filing;" and (3) "the timing of [d]ebtor's
bankruptcy filing, occurring just [one day] before
foreclosure, evidences an intent to delay or frustrate
legitimate efforts of the debtor's secured creditor[]." *See,
e.g., In re Westgate,* 432 B.R. at 724 (discussing the same
factors, *inter alia,* as additional support demonstrating the
existence of cause to dismiss debtor's petition).
Accordingly, the court affirms the Bankruptcy Court's
dismissal of the case.

### ii. Lift Stay Order

Next, the court considers whether the Bankruptcy
Court abused its discretion in lifting the automatic stay.

The court finds that it did not, and affirms the Lift Stay Order.

Debtor argues that pursuant to 11 U.S.C. § 362(d)(1) and (2), the Bankruptcy Court had no basis to lift the stay "since the property was necessary for an effective reorganization." (Debtor Appeal at 17-18.) In response, Fannie Mae argues that the Bankruptcy Court properly exercised its discretion in lifting the stay because there was no equity in the property and debtor did not meet its burden of showing that it could reorganize. (Fannie Mae Appeals Opp. at 15-19.) For the reasons set forth below, the court finds that the Bankruptcy Court did not abuse its discretion in lifting the stay.

The Bankruptcy Court granted Fannie Mae's motion to lift the stay finding that:

> There's clearly no equity in the property, and I frankly don't think that an effective reorganization is possible, based on what I know. So . . . the motion . . . for relief from stay will be granted.

(Bankr. Tr. at 49:6-11.)

First, the court finds that the Bankruptcy Court did not err in lifting the stay without first holding an evidentiary hearing. Although 11 U.S.C. § 362(d) refers to the bankruptcy court's authority to dismiss a petition upon

17

"notice and hearing," the extent of the "hearing" required in a particular case is committed to the sound discretion of the bankruptcy judge. *In re C-TC 9th Ave. P'ship,* 113 F.3d 1304, 1313 (2d Cir. 1997) (holding that "the bankruptcy court's election to decide the bad faith issue without a formal evidentiary hearing was within its discretion" where "the record provided ample evidence on which the court could make such a decision.") "When the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss a Chapter 11 case for cause, the bankruptcy court may do so." *Id.* at 1312. The only case debtor cites for its argument to the contrary does not contradict this principle. In *In re Drislor Assocs.*, 110 B.R. 937, 940 (D. Colo. 1990), the court held that "[t]he notice and hearing contemplated by [11 U.S.C. § 362(d)] is defined as 'such opportunity for a hearing as is appropriate in the particular circumstances.'" *Id.* at 940. The bankruptcy court in that case allowed the debtor to introduce exhibits, and assumed the truth of debtor's proof, but found, without holding an evidentiary hearing, that the offer of proof, if true, was insufficient to justify continuation of the stay. *Id.* The district court affirmed the bankruptcy court's procedure, notwithstanding that the bankruptcy court had not held an evidentiary hearing. *Id.* Similarly, here, the

Bankruptcy Court was permitted to lift the stay and dismiss debtor's case upon the record before it, without an evidentiary hearing, and doing so was not clear error.

Moreover, the Bankruptcy Court did not abuse its discretion in providing relief from the stay where there was no equity in the property. *See* 11 U.S.C. § 362(d)(2)(A) ("the court shall grant relief from the stay . . . if . . . the debtor does not have an equity in such property"). "Once the movant shows that the debtor has no equity in the property . . . the burden shifts to the debtor to show that the property is necessary to an effective reorganization." *In re Kent Terminal Corp.*, 166 B.R. 555, 559 (Bankr. S.D.N.Y. 1994) (citing *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988)). "The test is one of feasibility. The debtor need not show that the plan is confirmable, but that the things which are to be done after confirmation can be done as a practical matter. A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable." *In re 160 Bleecker St. Assocs.*, 156 B.R. 405, 411 (S.D.N.Y. 1993) (citations omitted).

Here, the Bankruptcy Court found and debtor conceded that the property had no equity. (Debtor Pet. at 22 n.4; Debtor Second Pet. at 27 n.8 (conceding that debtor has no equity in the property).) Accordingly, the burden shifted to debtor to establish that there was a reasonable prospect for reorganization. As discussed above, debtor did not sustain this burden.[3] Thus, the Bankruptcy Court did not abuse its discretion in lifting the stay.

Finally, lifting the stay based, in part, upon debtor's shortfall in adequate protection payments to Fannie Mae was not an abuse of discretion. The "purpose of providing adequate protection is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy." *In re Worldcom, Inc.,* 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 338-39 (1977)). A secured creditor is not adequately protected where the debtor is not making loan payments or other payments necessary to preserve the value of the collateral. *In re Lord,* 325 B.R. 121, 129 (Bankr. S.D.N.Y. 2005); *In re Zinke,* No. 88 Civ. 3628, 1989 U.S. Dist.

---

[3] Debtor relies heavily on a commitment letter from Talmu Inc. which sets forth its agreement to loan debtor $140,000 for the purposes of reorganization, arguing that this letter "substantiated the ability of the Debtor to confirm its proposed Amended Chapter 11 Plan." (Debtor Appeal at 10.) Given the outstanding loan due to Fannie Mae, however, the court affirms the bankruptcy court's finding that this purported cash infusion does not establish the viability of debtor's plan of reorganization. (Bankr. Tr. at 32:23-25 ("By the way, I'm not sure that the plan gets confirmed if you have the 140,000 sitting on that bench right now.").)

LEXIS 12216 (E.D.N.Y. Jul. 21, 1989). Here, debtor does not dispute that it did not make the full payment required by the Bankruptcy Court's Final Cash Collateral Order. (Debtor Appeal at 24-26.) Debtor's failure to make adequate protection payments is further evidence that the Bankruptcy Court did not abuse its discretion in lifting the stay.

Accordingly, for the foregoing reasons, the Bankruptcy Court did not abuse its discretion in lifting the automatic stay, and the court affirms the Bankruptcy Court's order to do so.

## II. Debtor's Emergency Application

### a. Standard

Appellant's second "Emergency Order to Show Cause," dated July 18, 2011, is a motion to stay the Lift Stay Order, the Dismissal Order, and the foreclosure sale. The standard for granting a motion to stay is the same as that for a preliminary injunction and, thus, the movant must establish all four of the following elements: (1) likelihood of success on the merits of the appeal; (2) appellant will suffer irreparable injury if the stay is denied; (3) no substantial harm will come to appellee; and (4) that issuance of the stay would not involve harm to the public interest. *See, e.g.*, *In re Sphere Holding Corp.*, 162 B.R. 639, 642 (E.D.N.Y. 1994); *In re Crescenzi*, 58 B.R. 141, 142-43 (S.D.N.Y. 1986).

### b. Application

#### i. Likelihood of Success on the Merits

For the reasons set forth above, the court finds debtor's appeals of the Dismissal Order and the Lift Stay Order without merit.  Accordingly, debtor's likelihood of success on the merits is non-existent.

#### ii. Irreparable Injury

Debtor argues that it will suffer irreparable injury in the absence of a stay, "since a foreclosure sale, currently scheduled for [July 21, 2011], will render the appeals moot, and the Appellant will not have an adequate remedy at law." (Debtor Pet. at ¶ 13; Debtor Second Pet. at ¶ 14.)

The court does not dispute that when the foreclosure sale proceeds, the primary asset of debtor will be sold and dissipated.  However, for the reasons discussed *supra*, because the court dismisses debtor's appeals and debtor cannot establish a likelihood of success on the merits, the balance of the equities compels the court to find that a stay is not appropriate.

### iii. Balance of Hardships

Furthermore, the balance of the hardships tips decidedly in favor of Fannie Mae because notwithstanding the injury that debtor claims it will face when the property is sold, debtor will not succeed on the merits.

As discussed *supra*, debtor argues that its hardship is that "a foreclosure sale . . . will render the appeals moot, and the Appellant will not have an adequate remedy at law." (Debtor Pet. at ¶ 13; Debtor Second Pet. at ¶ 14.) Debtor further argues that "[t]he public interest mandates granting the Stay. This is because the public has an interest in debtors paying all their creditors, not just the secured creditor." (Debtor Pet. at ¶ 121; *see also* Debtor Second Pet. at ¶¶ 15, 137, 138.) Fannie Mae argues that "[i]f a stay is granted, . . . Fannie Mae's debt will . . . continue to go unpaid, as it has with few exceptions since Spring of 2008. Moreover, Fannie Mae has no way to protect the value of its collateral . . . . Fannie Mae will continue to have no visibility of the Property and no ability to protect it from damage, including harm from crime and drugs at the Property and any other damage that may go unrepaired." (Fannie Mae Opp. at 24-25.)

In light of the court's finding above that debtor has no likelihood of success on the merits, and given that the

court is dismissing debtor's appeals of the Lift Stay Order and the Dismissal Order, the balance of the equities clearly favors Fannie Mae, which, without the sale, faces a continued delay and the uncertainty of protecting its interest in the value of the Property. Debtor's argument that a sale will render its appeals moot is itself moot, as debtor has had the opportunity to fully present its appeals to this court and has lost its appeals.

## CONCLUSION

For the reasons set forth above, debtor's application for an Emergency Order to Show Cause is denied, debtor's requests to stay the Lift Stay Order, the Dismissal Order and the foreclosure sale are denied, and debtor's appeals of the Orders are denied in their entirety. The court sees no reason why the foreclosure sale, currently scheduled for July 21, 2011 at 3 p.m., should not proceed as scheduled.

**SO ORDERED.**

Dated: July 20, 2011
Brooklyn, New York

_____/s/_____ _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York